**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LADERIC F. MCDONALD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:10-CV-02104-RWS-NAB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael Astrue ("Defendant") denying the application for a period of disability and disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 435, and the

application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 - 1383b, filed

by LaDeric McDonald ("Plaintiff"). [Doc. 1]. Plaintiff filed a Brief in Support of the

Complaint. [Doc. 14]. Defendant filed a Brief in Support of the Answer. [Doc. 20]. Plaintiff

did not file a Reply. This matter was referred to the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b)(1). [Doc.13].

**I.**
**PROCEDURAL HISTORY AND**
**FACTUAL BACKGROUND**

Plaintiff filed his applications for benefits on April 6, 2009.[1] His claims were denied at

the initial determination level and Plaintiff filed a timely request for a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 62-66). The ALJ held a hearing and denied the claim

in a written decision dated May 20, 2010. (Tr. 23-48); (Tr. 10-18). The Appeals Council denied

---

[1] Summaries of Plaintiff's applications are included in the administrative record. *See* (Tr. 103-230).

Plaintiff's request for review. (Tr. 1-5). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## EVIDENCE BEFORE THE ALJ

### A. Testimony at the Hearing

#### 1. Plaintiff's Testimony

Plaintiff's administrative hearing was held on February 17, 2010. Plaintiff was present and represented by counsel. Plaintiff testified, as well as vocational expert James Israel.

Plaintiff testified that he was twenty-nine years old. (Tr. 29, 40). Plaintiff stated that he has a high school diploma, but no college or vocational training past high school. (Tr. 30). Plaintiff is not married and has no children. (Tr. 29). Plaintiff testified that he last worked in July 2009 as a pizza deliveryman. (Tr. 32). His employment ended, because he was afraid to return to work after he witnessed the owner being shot in a robbery, and then being personally robbed the next day. (Tr. 32-33).

Plaintiff testified that he is positive for human immunodeficiency virus ("HIV"), but he does not take anti-viral medications because his "viral load is good" and the medication made him sick. (Tr. 41). Plaintiff testified that when he wakes up in the morning he feels like crying. (Tr. 38). Plaintiff testified that he does not want to get out of bed, watch television, or talk to people. (Tr. 38). Plaintiff testified that he is afraid that people are laughing at him and make fun of him. (Tr. 38). Plaintiff stated that people look at him funny and do not want to be around him because he is always so sad. *Id.*

He testified that he wakes up during the night thinking of death and that he constantly dreams about death. (Tr. 38). Plaintiff stated that sometimes he pretends to be someone else to make himself "feel good." (Tr. 38). Plaintiff stated that he stopped driving, because he is so

mean that he might get road rage.  (Tr. 39).  Plaintiff stated that road rage is one of the ways that

he thinks about killing himself.  (Tr. 38-39).  Plaintiff stated that he always thinks about killing

himself.  (Tr. 39).

Plaintiff stated that he cannot make simple decisions, for example, regarding what he

should have for breakfast. (Tr. 38).  Plaintiff also stated that he "forgets things," such as whether

he has something to do during the day and that he sometimes puts his clothes on backwards

without knowing it.  (Tr. 38, 40).  Plaintiff testified that he did not have the energy to tie up his

shoes.  (Tr. 40).   Plaintiff denied that he currently uses illegal drugs, but admitted to drinking

alcohol on special occasions.  *Id.*

### 2. Vocational Expert's Testimony

Vocational Expert, James Israel ("VE"),  testified that Plaintiff had multiple jobs with

most of them consisting of hours well below forty hours per week.  (Tr. 43).  The VE stated that

there were no transferrable skills from Plaintiff's previous work history as a fast food worker,

telemarketer, delivery job driver, youth worker, messenger, and clerical worker.  (Tr. 43).

The ALJ asked the VE to determine whether a hypothetical individual of Plaintiff's age,

education, and work experience with no exertional limitations could perform any of Plaintiff's

past work with the following limitations: (1) limited to performing simple, routine, and repetitive

tasks; (2) low stress environment that only requires occasional decision making and occasional

changes in the work setting; (3) no interaction with the public; and (4) occasional interaction

with co-workers.  (Tr. 43-44).  The VE responded that all past jobs that exist would be

eliminated with the restrictions posed by the ALJ.  (Tr. 44).  The VE then identified three jobs

that exist in substantial numbers in Missouri and the national economy that could be performed

by an individual with the restrictions noted above.  (Tr. 44-45).  These jobs were factory

assembler; hand packer or wrapper; and product inspector, checker, and examiner.  (Tr. 44).  The

VE also testified that there would be no jobs available if the hypothetical individual was limited to working in a place where there were no changes whatsoever.  (Tr. 46).

**B.  Medical Records**

On July 12, 2007, Plaintiff visited Quest Diagnostics requesting a primary physician and was examined by Simeon Prager, M.D. ("Dr. Prager").  (Tr. 284).  Dr. Prager noted Plaintiff's complaints of tingling in his feet, swollen, aching joints and pain and numbness in the right foot. *Id.*  Plaintiff reported feelings of depression and worthlessness.  *Id.*  Dr. Prager performed blood work and suggested Plaintiff return in two weeks to discuss results and the possible need for medications. (Tr. 285).  Dr. Prager noted that Plaintiff denied any suicidal ideation.  *Id.*

On July 17, 2007, Plaintiff returned to visit Dr. Prager. (Tr. 283).  Plaintiff reported continued feelings of weakness, right knee pain, and swelling at the base of his right thumb. *Id.* Dr. Prager discussed Plaintiff's HIV infection results and hepatitis immunities and suggested Plaintiff return in three months. *Id.*

On October 11, 2007, Plaintiff visited Dr. Prager.  (Tr. 282).  Dr. Prager noted that Plaintiff continued to feel weak, had a muscle biopsy scheduled later that month, and needed a note stating he was not an infection risk to children he would be working with.  *Id.*  Dr. Prager concluded that continued observation of Plaintiff's HIV infection was necessary and suggested the patient return in three months. *Id.*

Plaintiff visited Saint Louis University Hospital for a psychiatric exam on November 19, 2007[2] with complaints of depression, poor energy and crying spells. (Tr. 317). He reported having been depressed for the past seven years, with "ups for 6-7 months and then downs for 1-

---

[2] Plaintiff Laderic McDonald's Brief In Support of Complaint cites the visit to Saint Louis University Hospital as two separate visits in his complaint, November 10, 2007 and November 19, 2007 [Doc 14]. The totality of the Psychiatric New Patient Exam record supports a conclusion that the visits were one in the same occurring on November 19, 2007.

1.5 months." *Id*. Plaintiff reported increased depression the previous six months, poor energy, sleep, and concentration. Plaintiff reported that these conditions were why he had "difficulties keep[ing] a job." *Id*. He complained of "feelings of hopelessness and helplessness, on and off." *Id*. Plaintiff reported a history of "suicide attempts" and episodes of racing thoughts. (Tr. 318). The examining physician diagnosed adjustment disorder and major depressive disorder, recurrent, and assessed a GAF of 65 and initiated antidepressant medication trials. (Tr. 327-28).

During a visit to Community Alternatives, Inc ("Community Alternatives") on February 18, 2008, Plaintiff stated that he "fe[lt] if [he was] dead things would be fine but [didn't] feel like hurting [him]self." (Tr. 316). He complained that "anything can get him down," and that he's sleepy and tired at work. *Id*. Plaintiff stated that he lost his appetite, however, the doctor noted no weight loss. *Id*. Plaintiff reported that he's "scared to do anything," he felt "hopeless," and had a "hard time remembering things and forgets easily." *Id*.

On July 15, 2008, Plaintiff was admitted into SSM Depaul Emergency triage with complaints of stomach pain. (Tr. 290). He was diagnosed with generalized abdominal pain and discharged with instructions to follow up with his physician. (Tr. 294).

On January 7, 2009, Plaintiff visited Community Alternatives and reported he had been "moody" and "depressed." (Tr. 313). Plaintiff's concentration was poor but improving. *Id*. His sleep was better but he was experiencing "trouble staying asleep." *Id*. He denied suicidal and homicidal ideation, but had "thoughts of dying." *Id*.

On February 5, 2009, Plaintiff visited Community Alternatives and reported he had been doing better. (Tr. 312). His focus and concentration were "better" and he felt more motivated. *Id*. He claimed that his energy and sleep had improved and his appetite was improving. *Id*.

Plaintiff reported that his depressed moods had decreased in frequency and intensity, but he occasionally had racing thoughts. *Id.* The examiner noted that Plaintiff was "currently in school studying human resources." *Id.* Plaintiff also had a "job interview… which he felt went well." *Id.*

On March 4, 2009, Plaintiff visited Community Alternatives and claimed to be doing well. (Tr. 311). He reported that he had trouble initiating and maintaining sleep since beginning his new medications. *Id.* He reported that Paxil had "significantly improved mood and temper" but complained of racing thoughts and excessive worrying. *Id.* Plaintiff reported that he was going to school for human resources. *Id.*

On April 1, 2009, Plaintiff visited Community Alternatives. (Tr. 310). He reported feeling well but experiencing trouble controlling his anger. *Id.* Plaintiff reported having felt sad for the previous eight weeks, but sleep had been good. *Id.* The observer noted that Plaintiff was cooperative, was fairly groomed, maintained fair eye contact and mood was "ok." *Id.*

On April 21, 2009, Plaintiff visited Northwest Infectious Disease. (Tr. 335). In the history and physical Adnan Siddiqui, M.D. ("Dr. Siddiqui") noted that "[o]verall the patient stat[ed] he ha[d] been doing well and ha[d] no new complaints." Dr. Siddiqui concluded that lab tests were warranted and treatment for Plaintiff's genital warts. (Tr. 336).

On May 6, 2009, Plaintiff visited Community Alternatives and reported poor focus and concentration, irritability, and racing thoughts. (Tr. 433). However, Plaintiff reported that his mood was "30% improved" since starting Wellbutrin the previous month. *Id.*

On August 17, 2009, Plaintiff visited People's Health Center and complained of right knee pain and right wrist/hand pain. (Tr. 407-08). He reported it felt like a "car accident," and

reported a numb feeling. (Tr. 407). The physician noted reduced muscle strength in the hands. (Tr. 408). The physician noted possible carpal tunnel syndrome and prescribed a wrist brace and Naprosyn for Plaintiff. *Id.*

On August 20, 2009, Plaintiff visited Community Alternatives with complaints of depression, sleep deprivation, variable appetite, poor concentration, frequent crying spells, and thoughts of death. (Tr. 432).

On September 28, 2009, Plaintiff visited Community Alternatives and reported feeling "very depressed." (Tr. 430). He stated that he found it "difficult to get out of bed" in the morning, lack of energy and motivation, social isolation, and poor concentration. *Id.* Plaintiff reported that he was "irritable," "easily agitated," and having "difficult[y] focusing on his course work." *Id.* His Wellbutrin prescription was increased and he was encouraged to attend therapy. *Id.*

On October 14, 2009, Plaintiff visited Community Alternatives. (Tr. 429). He reported he had been doing "terrible." *Id.* He complained of depression, "thinking out loud [and] blurting things out," and "racing thoughts." *Id.* Plaintiff reported "having poor focus and concentration," and thoughts about dying, but denied any suicidal ideation. *Id.* Plaintiff's medication was adjusted. *Id.* He was again encouraged to attend therapy. *Id.*

On October 19, 2009, Plaintiff visited Forest Park Hospital with complaints of numbness, tingling and shooting pain in his right knee, foot and leg, as well as his right hand and wrist. (Tr. 412-13). Examination revealed low back pain with spasm. (Tr. 413). The physician found chronic back pain with right leg radiculopathy, and possible right carpal tunnel syndrome. (Tr. 414). The physician prescribed various medications and instructed Plaintiff to follow up with a

physician. *Id.* Dr. Smita S. Parikh noted complaints of cough and lower back pain. (Tr. 423-24). Test results revealed no fractures and no active diseases. *Id.*

On November 11, 2009, Plaintiff visited Community Alternatives. (Tr. 428). He reported having been "'up and down.'" *Id.* Plaintiff reported feeling irritable at times, "crying a lot," and being "always angry." *Id.* However, he claimed that "[o]verall things are a little better." *Id.* He denied suicidal or homicidal ideation, but reported continued feelings of hopelessness, helplessness, and thoughts of death. *Id.*

On November 12, 2009, Maurice Redden, M.D. ("Dr. Redden") performed a Medical Assessment of Ability to Do Work-Related Activities ("Assessment") on Plaintiff. (Tr. 426-27). In the Assessment, Dr. Redden reported that Plaintiff's ability to follow work rules, relate to co-workers, use judgment, and interact with a supervisor was "fair." *Id.* Dr. Redden assessed Plaintiff's ability to deal with the public, deal with work stresses, function independently, and maintain attention/concentration as "poor/none." (Tr. 426). Dr. Redden's Assessment also noted that Plaintiff's ability to understand, remember, and carry out detailed but not complex instructions and remember and carry out simple instructions was "fair," but indicated his ability to understand and remember and carry out complex instructions as "poor/none." *Id.* Dr. Redden states Plaintiff's ability to maintain his personal appearance was good, but his ability to behave in an emotionally stable manner, related predictably in social situations and demonstrate reliability was "fair." (Tr. 427). Plaintiff's impairments in making personal social adjustments were attributed to his diagnosis of major depression. *Id.*

On January 13, 2010, Plaintiff was admitted into the St Louis University Hospital with complaints of abdominal pain, suicidal ideation, rectal pain, and chest pain. (Tr. 464). Plaintiff

was eventually admitted to the psychiatric department, but he was released hours later due to an improved condition, with no restrictions and the ability to resume normal activity.  (Tr. 483).

## C.     Opinions of Non-Treating/ Non-Examining Medical Professionals

On June 4, 2009, Kyle DeVore, Ph.D. performed a Psychiatric Review Technique on Plaintiff.  (Tr. 348).  Plaintiff's medical disposition required a RFC Assessment and the disposition was based on Affective Disorders and Substance Addition Disorders.  *Id*.  The medically determinable impairment was major depression disorder (MDD) and chronic cannabis dependency and ETOH abuse, which was substantiated by symptoms, signs, and laboratory findings.  (Tr. 351, 354).  Plaintiff's functional limitations included mild Restriction on Activities of Daily Living ("ADL"); moderate Difficulties in Maintaining Social Functioning, and moderate Difficulties in Maintaining Concentration, Persistence, or Pace.  (Tr. 356).  There was insufficient evidence as to Repeated Episodes of Decompensation, Each of Extended Duration.  *Id*.  Dr. DeVore found that Plaintiff's ADLs were "disproportionate to most recent exam findings."  (Tr. 358).  He noted that Plaintiff's "alleged functional limitations and reported severity of [symptoms] ha[d] a long [history] of being exaggerated."  *Id*.  Dr. DeVore reported that Plaintiff seemed "unconcerned about his chronic cannibus dependence (3-4 blunts/day) and chronic ETOH abuse which clearly do not help improve his mood."  Overall, Dr. DeVore concluded that Plaintiff saw significant improvement with his medications and found the Plaintiff was capable of "at least simple work tasks" and "[s]ome social restrictions might help with anxiety/stress."  *Id*.

Plaintiff completed a Mental Residual Functional Capacity Assessment on June 4, 2009.  (Tr. 360).  Understanding and Memory testing revealed that Plaintiff was not significantly

limited in the ability to remember locations and work-like procedures; to understand and remember very short and simple instructions, and to understand and remember detailed instructions. *Id.* Sustained Concentration and Persistence testing revealed that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions; to carry out detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to performed at a consistent pace without an unreasonable number and length of rest periods; and to sustain an ordinary routine without special supervision. (Tr. 360-61). Plaintiff's ability to maintain attention and concentration for extended periods of time and to work in coordination with or proximity to others without being distracted by them were only moderately limited. (Tr. 361).

Social Interaction testing revealed that Plaintiff is not significantly limited in his ability to interact appropriately with the general public and ask simple questions and request assistance. *Id.* However, Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness were moderately limited. *Id.*

Adaptation testing revealed that Plaintiff is not significantly limited in his ability to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; and to travel in unfamiliar places or use public transportation. *Id.* However, Plaintiff's ability to set realistic goals or make plans independently of others is moderately limited. *Id.* Dr. DeVore concluded that the Plaintiff had "partial credibility" was

"capable of performing at least simple work tasks" and "might benefit from restricted social contact."  (Tr. 362).

# III.

# ALJ DECISION

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012 and that Plaintiff has not been engaged in substantial gainful activity since August 17, 2008.  (Tr. 12).  The ALJ found that the Plaintiff had one severe impairment- major depressive disorder.  (Tr. 12).  The ALJ determined that Plaintiff's HIV, carpal tunnel syndrome, Schmorl's nodes at T12 and L3, right leg radiculopathy, and diabetes mellitus are non-severe impairments.  (Tr. 12).  Further, the ALJ opined that none of Plaintiff's impairments meet or medically equal in severity any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13).  The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but is limited to occupations that involve only simple, routine, repetitive tasks; require no decision-making; involve only occasional changes in the work setting; casual and infrequent contact with co-workers; and no interaction with the public.  (Tr. 14).  The ALJ determined that Plaintiff is unable to perform any past relevant work, but that in considering Plaintiff's age, education, work experience, and RFC there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 17-18).  The ALJ therefore concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, from August 17, 2008 through the date of the ALJ's decision.  (Tr. 18).

# IV.

## LEGAL STANDARDS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, the Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). The burden of persuasion to prove disability remains with the claimant throughout the evaluation process. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citation omitted); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

In this sequential analysis, first, the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id*. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.[3] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson*, 363 F.3d at 737. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. §§ 404.1520(f), 416.920(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the

---

[3] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled.

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed

because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The factual findings of the ALJ are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

## V.

## DISCUSSION

Plaintiff raises three points of error in arguing that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues that the RFC determination does not include sufficient limitations. Second, Plaintiff contends that the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Redden. Third, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's physical impairments. The undersigned will first address Plaintiff's second point of error, Dr. Redden's opinion, because Plaintiff's two remaining points of error, rely heavily on Dr. Redden's opinion.

## A. Dr. Redden's Opinion

Plaintiff argues that the ALJ did not properly follow the regulations in weighing the opinion offered by Plaintiff's treating provider, Dr. Redden. Dr. Redden completed a Medical Assessment of Ability to Do Work Related Activities (Mental) form in which he indicated that Plaintiff had poor to no ability to deal with the public, deal with work stresses, function independently, maintain attention/concentration, and understand, remember, and carry out complex instructions. (Tr. 426). Dr. Redden found that Plaintiff's ability to perform every other activity listed on the form was fair or good. The ALJ gave "little weight" to Dr. Redden's opinion, finding that it is not supported by treatment notes or the results of psychological testing

and because it is inconsistent with the other medical evidence in the record. (Tr. 16). The undersigned finds that substantial evidence supports this decision.

Plaintiff does not argue that Dr. Redden's opinion should have been afforded controlling weight. Rather, Plaintiff contends that the ALJ erred in weighing Dr. Redden's opinion because the ALJ "did not sufficiently acknowledge that the treating relationship of Dr. Redden would give him superior knowledge of Plaintiff's longitudinal picture." The undersigned acknowledges that Dr. Redden, as indicated by treatment records, is a treating source that examined Plaintiff on a number of occasions, and generally, more weight is given to an opinion from such a source. *See* 20 C.F.R. §§ 416.927(d)(1)-(d)(2); 416.927(d)(2)(I). However, the length of the relationship is only one factor that the ALJ is to consider in evaluating a medical opinion. Other factors include the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion (how well supported the decision is by relevant evidence such as medical signs and laboratory findings), consistency of the opinion (how consistent the opinion is with the record as a whole), and the specialization of the source providing the opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6).

Here, the ALJ found that Dr. Redden's opinion lacks supportability and consistency. Specifically, the ALJ found that the opinion is not supported by treatment notes or psychological testing and that the opinion is inconsistent with other medical evidence in the record. The undersigned finds substantial evidence to support these findings. First, there is no evidence in the record that Dr. Redden ever ordered, conducted, or reviewed any psychological or psychiatric testing of Plaintiff. The treatment notes that Dr. Redden composed on Plaintiff throughout the course of treatment appear to be based solely on Plaintiff's subjective complaints, rather than on any objective medical evidence. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir.

2007) (ALJ entitled to give less weight to a medical opinion that is based primarily on claimant's subjective complaints). Therefore, the ALJ did not err in concluding that Dr. Redden's opinion is not supported by psychological testing.

Further, Dr. Redden's opinion is not supported by and is inconsistent with his own treatment notes and other notes taken by his office, Community Alternatives. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) ("A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions.") (citation omitted). Throughout his treatment of Plaintiff, Dr. Redden never noted any concerns that Plaintiff could not function independently, which he indicated in his November 12, 2009 opinion. In fact, treatment notes suggest that Plaintiff could function independently. Dr. Redden and other doctors at Community Alternatives repeatedly noted that Plaintiff was in school and that he was working. Also, doctors consistently prescribed medication to Plaintiff and there is no treatment note that suggests that Plaintiff needed assistance in taking or remembering his medication. Furthermore, Plaintiff testified at the hearing that he lived in an apartment by himself and that he drives occasionally. All of these factors are inconsistent with Dr. Redden's opinion that Plaintiff cannot function independently.

Dr. Redden also opined that Plaintiff had poor or no ability to remember, understand and carry out complex instructions. However, neither Dr. Redden nor any other doctor ever noted any concerns that Plaintiff had problems with memory or understanding. Although it was consistently noted that Plaintiff complained of poor concentration and focus, Plaintiff's insight and judgment were routinely noted as being fair by Dr. Redden and other doctors at Community Alternatives. Because of these inconsistencies, the undersigned finds that the ALJ did not err in discrediting Dr. Redden's opinion. *See Hacker*, 459 F.3d at 937.

It must also be noted that the ALJ did not totally disregard Dr. Redden's opinion, as evidenced by the fact that the ALJ's RFC determination incorporated many of the limitations identified by Dr. Redden. For example, the ALJ concluded that Plaintiff is limited to simple, routine, repetitive tasks, that require no decision making. This limitation is consistent with Dr. Redden's opinion that Plaintiff has poor ability to maintain attention and concentration. The ALJ's RFC determination also limited Plaintiff to no interaction with the public and only casual, infrequent contact with co-workers. These limitations are consistent with Dr. Redden's opinion that Plaintiff has poor to no ability to deal with the public and only a fair ability to relate to co-workers and interact with supervisors.

Social Security regulations set forth the factors that the ALJ should consider when weighing a medical opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6). The regulations do not indicate that any one factor should be given more weight than another. Therefore, the length of Dr. Redden's treatment of Plaintiff, although a relevant factor to the determination, did not require the ALJ to accept Dr. Redden's opinion as true. In considering other factors set forth by the regulations, the ALJ concluded that Dr. Redden's was not entitled to substantial weight. For the reasons discussed above, the undersigned finds substantial evidence to support this decision.

To the extent that Plaintiff argues that the ALJ's decision should be reversed because the ALJ did not explicitly acknowledge the length of the treatment relationship with Plaintiff, the undersigned finds such argument to be without merit. Plaintiff fails to cite any authority that requires an ALJ to methodically discuss each of the factors listed in the regulations in evaluating a treating physician's opinion. The regulations require only that the ALJ give good reasons for the particular weight afforded to the opinion. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir.

2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.") (citing 20 C.F.R § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p.  Furthermore, assuming arguendo that the ALJ erred in not explicitly discussing the length of the treatment relationship, such error would not warrant reversal because the ALJ relied on substantial evidence in discrediting Dr. Redden's opinion and the outcome of the case would not change simply because the ALJ explicitly acknowledged the length of the relationship.  *See Robinson v. Sullivan*, 956 F.2d 838, 841 (8th Cir. 1992) ("[A]n 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.") (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).

## B. Plaintiff's RFC

### 1. Mental Impairment

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because the ALJ did not include sufficient limitations arising from Plaintiff's mental conditions, including limitations with public interaction, work stress, independent functioning, and concentration.

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[4] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but is "limited to occupations that involve only simple, routine, repetitive tasks;

---

[4] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

that require no decision-making; that involve only occasional changes in work setting; and that involve no interaction with the public and only casual, infrequent contact with co-workers." (Tr. 14). Plaintiff claims that this RFC does not include sufficient limitations in the areas of public interaction, work stress, independent functioning, and concentration. In arguing that the RFC should have included more restrictive limitations in these areas, Plaintiff relies on Dr. Redden's November 12, 2009 opinion and subjective complaints Plaintiff made to various doctors between August 2009 and January 2010. To the extent that Plaintiff relies on Dr. Redden's opinion, his argument is without merit because, as discussed above, the ALJ did not err in discrediting Dr. Redden's opinion. *See supra*. Furthermore, the RFC includes restrictions for some of the limitations identified by Dr. Redden. *Id*.

With respect to the subjective complaints that Plaintiff made to doctors, the undersigned first notes that the ALJ found that Plaintiff is not fully credible, and Plaintiff does not challenge that determination. Furthermore, the treatment notes Plaintiff relies on do not suggest that more restrictive mental limitations are warranted. Plaintiff first relies on a treatment note from an August 20, 2009 visit to Community Alternatives. Plaintiff complained of feeling "very depressed" for two months, being withdrawn and having crying spells and thoughts of death. (Tr. 432). It was noted, however, that Plaintiff had not been taking his medication for at least two months before the visit. *Id*. Plaintiff also cites an October 14, 2009 treatment note from Community Alternatives in which he complained of poor focus and concentration, racing thoughts, and thoughts of death. (Tr. 429). Plaintiff also stated that he found himself "thinking out loud" and blurting things out. *Id.* Doctors noted, however, that Plaintiff was still taking online college courses and although he was depressed, his sadness had gotten a little better since his medication was increased after a previous visit. *Id.* Plaintiff also relies on a November 11,

22

2009 treatment note from Community Alternatives in which Dr. Redden noted complaints of irritability, crying, feelings of helplessness and hopelessness, and thoughts of death. (Tr. 428). However, Dr. Redden noted that Plaintiff was coping with things a little better and that overall, things were a little better. *Id.*

Finally, Plaintiff cites to a January 13, 2010 treatment note from St. Louis University Hospital Emergency Room in which it is noted that Plaintiff complained of suicidal ideation and severe depression. (Tr. 464). Doctors determined that his problems were an "acute exacerbation" and noted that his symptoms had improved by the next morning. (Tr. 467). Upon his discharge, no were restrictions were placed upon Plaintiff and he was allowed to resume normal activity. (Tr. 483). Neither doctors at St. Louis University Hospital nor Community Alternatives noted any work-related restrictions regarding Plaintiff's mental abilities. Therefore, the undersigned finds no support for a finding of more restrictive mental limitations.

### 2. Physical Impairments

Plaintiff also argues that the ALJ erred in determining Plaintiff's RFC because the ALJ did not properly analyze Plaintiff's physical impairments, including HIV and carpal tunnel syndrome, and other impairments.

To be considered disabled under the Social Security Act, a claimant must have a severe impairment that prevents the claimant from performing their past relevant work or other substantial gainful work in the national economy. 20 C.F.R. § 404.1505. An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms[.]" *Id.*

A severe impairment is defined as one which significantly limits the claimant's physical or mental ability to do basic work activities. *See Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

The ALJ evaluated Plaintiff's HIV and carpal tunnel syndrome and determined that neither of the impairments were severe. The undersigned finds substantial evidence to support this conclusion. Although Plaintiff has HIV, there is no evidence in the record that this condition causes any work related limitations. Plaintiff fails to cite to any evidence in the record that suggests that HIV limits his ability to perform basic work activities. *See Pelkey*, 433 F.3d at 577. Plaintiff has had the condition since at least 1997 and has held many jobs and he took college level courses despite the condition. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (The fact that a claimant has worked with an impairment over three years, coupled with the absence of evidence of significant deterioration in her condition, demonstrate the impairment is not disabling). Further, Plaintiff testified that he was not taking medication for the condition because his viral load was "good." (Tr. 41). Therefore, the undersigned finds substantial evidence to support the ALJ's determination that Plaintiff's HIV is not a severe impairment.

With regards to Plaintiff's carpal tunnel syndrome, the ALJ evaluated the condition but concluded the impairment was not severe because the record contained no supporting medical evidence. *See* 20 C.F.R. §§ 404.1508, 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms[.]"). The record contains only two references to carpal tunnel syndrome. First, a treatment note from August 17, 2009 noted the possible presence of the condition. (Tr. 408). Reduced muscle strength in Plaintiff's hand was also

noted.  *Id.*  The treatment note did not confirm the diagnosis and although the treatment note appears to order an x-ray of Plaintiff's hand, there is no indication that the x-ray was performed or that any other tests were performed to verify the suspected condition.  (Tr. 408).  Further, the treatment note does not suggest that this suspected condition significantly limited Plaintiff in any way.  Doctors did not impose any limitations related to this condition.

The second reference to carpal tunnel syndrome is contained in an October 19, 2009 treatment record from Forest Park Community Hospital Emergency Department.  (Tr. 414).  Plaintiff complained of numbness, tingling, and shooting pain intermittently in his right hand and wrist.  *Id.*  Doctors listed carpal tunnel syndrome as a presumptive diagnosis and referred Plaintiff for further treatment of the suspected condition.  (Tr. 414).  Doctors also prescribed a hand splint for Plaintiff to wear at night.  (Tr. 4254).  Again, there is no indication that any tests were performed or that doctors made a formal diagnosis or imposed any limitations related to the condition.  Furthermore, there is no indication in the record that Plaintiff pursued any further treatment for carpal tunnel syndrome.  *See Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem'" (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995))).  It must also be noted that Plaintiff failed to mention carpal tunnel syndrome or hand or wrist pain during the hearing when asked to explain the problems that prevented him from working.  (Tr. 38-39).  Plaintiff only described mental impairments.  *Id.*  Therefore, the undersigned finds substantial evidence to support the ALJ's determination that carpal tunnel syndrome is not a severe impairment.

Plaintiff also notes that he was diagnosed with radiculopathy in his right leg.  The ALJ acknowledged this diagnosis but noted that Plaintiff has not been prescribed strong pain

medication, referred to physical therapy, or treated by a specialist for this condition.  (Tr. 13).

The ALJ therefore concluded the condition was not severe.  (Tr. 13).  The record contains only

one medical record that mentions radiculopathy.  Doctors diagnosed the condition during

Plaintiff's October 19, 2009 visit to the Forest Park Community Hospital Emergency

Department.  (Tr. 414).  Doctors referred Plaintiff for treatment of the condition, but the record

lacks any evidence that Plaintiff pursued further treatment.  *See Page*, 484 F.3d at 1044 ("While

not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical

problem")(citation omitted).  The record also lacks any indication that Plaintiff was prescribed

medication for this condition.  Further, Plaintiff failed to mention this condition during the

hearing when asked to explain the problems that prevented him from working.  (Tr. 38-39).  The

record includes no medical evidence that this condition significantly limits Plaintiff's ability to

perform basic work activities.  *See Pelkey*, 433 F.3d at 577.  The ALJ therefore did not err in

finding this condition to be non-severe.

Plaintiff also cites to various other complaints of pain that he made to doctors between

June of 2009 and January 2010.  Plaintiff's complaints include pain in his knee, leg, arm, chest,

shoulder, and back.  Plaintiff, however, fails to cite to any evidence that attributes the alleged

pain to any anatomical, physiological, or psychological abnormality which can be shown by

medically acceptable clinical and laboratory diagnostic techniques.  *See*  20 C.F.R. §§ 404.1508,

416.908.  Further, the record contains no medical evidence that any of the alleged pain

significantly limits the claimant's physical or mental ability to do basic work activities.  *See*

*Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

Therefore, the undersigned finds that the ALJ did not err by failing to include any physical

limitations in Plaintiff's RFC.

**VI.**
**CONCLUSION**

For the reasons set forth above, the undersigned finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **DENIED** and that judgment be entered in favor of Defendant. [Docs. 1, 14].

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 24th day of February, 2011.

        /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE